IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| LATTANNISHA ROBERTS )<br>Plaintiff, )<br>)<br>)<br>vs. )<br>)<br>CASE PRO, INCORPORATED; THE )<br>UNITED STATES NAVAL HOSPITAL; )<br>THE UNITED STATES OF AMERICA; )<br>AND THE SOUTH CAROLINA )<br>DIVISION OF VETERANS AFFAIRS, )<br>)<br>Defendants, )<br>) | CIVIL ACTION NO:  9:13-cv-03394-DCN<br><br><br><br><br>**COMPLAINT** |

**COMPLAINT FOR DAMAGES**

Plaintiff, Lattannisha Roberts, by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, hereby sues CASE PRO, INC. ("Case Pro"), the UNITED STATES NAVAL HOSPITAL (USNH); THE UNITED STATES OF AMERICA (USA); and the SOUTH CAROLINA STATE DIVISION OF VETERANS AFFAIRS (SCDVA), and alleges as follows:

**NATURE OF THE ACTION**

1. This is a personal injury action brought by Lattannisha Roberts received after the vehicle she was driving in Beaufort County was struck by a fire truck owned by the City of Port Royal and stolen by Kalvin Hunt who was allowed to walk or run out the hospital and front gate or post of the Beaufort Naval Hospital naked or only partially dressed, despite knowledge by employees of Case Pro, Inc., the United States Naval Hospital, and South Carolina Division of Veterans Affairs Office that Mr. Hunt intended to hurt others and himself.  These events form the basis of Plaintiff's allegations of negligence and negligent undertaking of a duty of care.  Plaintiff seeks actual and consequential damages as well as punitive damages to halt and deter such conduct from taking place in the future.

**THE PARTIES, JURISDICTION, AND VENUE**

2. At all relevant times, Plaintiff was and is a resident of Beaufort County, South Carolina.

3. Defendant CASE PRO is a Texas corporation with its corporate headquarters and principal place of business in San Antonio, Texas and is informed and believed to be a contractor with the USNH for the purpose of assisting in the care and treatment of patients of the USNH. Case Pro is authorized to transact business in South Carolina, and this action arises out of a tort committed in South Carolina; therefore, Case Pro is subject to the jurisdiction of this Court. Case Pro can be served via its registered agent for service of process: C T Corporation System, 2 Office Park Court, Suite 103, Columbia, SC 29223.

4. Defendant UNITED STATES NAVAL HOSPITAL is an agency of the United States of America and operates a hospital facility in Beaufort County, South Carolina on property of the United States of America for the medical needs of military service members and their families of the United States government and its service branches. The Defendant UNITED STATES OF AMERICA is a federal republic mainly in North America consisting of 50 states and the District of Columbia and is the party responsible for damages caused by its military service components permissively and properly plead and proven under its laws and statutes pursuant to the Federal Tort Claims Act and other statutes of the United States, including responsibility for the United States Navy and United States Marine Corps performing their roles as security sentries at military facilities, including the USNH, Beaufort. The SOUTH CAROLINA STATE DIVISION OF VETERANS AFFAIRS is a political subdivision organized and existing under the Office of the Governor pursuant to the laws of the State of South Carolina, S.C. Code Section 25-11-10, and subject to liability for damages pursuant to the South Carolina Tort Claims Act. The local branch of the Beaufort County Office of Veterans Affairs maintains its principal place of

business in Beaufort County, S.C. As a political subdivision of the State, the State Division of Veterans Affairs is subject to the jurisdiction of this Court.

5.    This Honorable Court has jurisdiction of the claims and parties pursuant to the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346 and 2671, *et. Seq.*, and 28 U.S.C.A. § 1367, Supplemental Jurisdiction, and joinder of necessary parties (Rule 19, F.R.C.P.)

## FACTS COMMON TO ALL COUNTS

6.    Kalvin Hunt is a former United States Marine Corps corporal who was found guilty of assault, communicating a threat, resisting arrest, and other charges during an April, 2011 court-marital. Mr. Hunt was subsequently discharged from the Marine Corps.

7.    Upon information and belief, Mr. Hunt suffers from Post Traumatic Stress Disorder as a result of his military service.

8.    On or about February 24, 2012, Beaufort County Veterans Affairs Officer Edward Ray received a telephone call from Kalvin Hunt's grandmother, Claretha Hunt, regarding Kalvin Hunt's erratic behavior and threats of injury.

9.    As the Veterans Affairs officer in Beaufort Edward Ray was familiar with Kalvin Hunt's disability, prior history of threats and conditions, and based on this information of renewed threats arranged to meet his grandmother and Kalvin Hunt to evaluate his condition and determine the level of hospitalization required.

10.    During this interview, upon information and belief, at approximately 1030 hours Kalvin Hunt disclosed to Edward Ray as the Beaufort County Veterans Affairs Officer that he wanted to hurt himself and others, which he had threatened in previous episodes.

11.    Beginning at 1030 hours, Edward Ray had knowledge that Kalvin Hunt posed a specified threat of harm to others.

12. Beginning at 1030 hours, Edward Ray, as Beaufort County Veterans Affairs Officer, had a special relationship with Kalvin Hunt.

13. Beginning at 1030 hours, Edward Ray and his employer, the South Carolina State Division of Veterans Affairs, had the ability to monitor, supervise, and control Kalvin Hunt's conduct.

14. Beginning at 1030 hours, Edward Ray as Beaufort County Veterans Affairs Officer and his employer the South Carolina State Division of Veterans Affairs voluntarily undertook a duty to monitor, supervise, control and seek medical assistance for Kalvin Hunt's irrational conduct.

15. As a result, Edward Ray arranged for Kalvin Hunt to be evaluated and admitted at the United States Naval Hospital (USNH) in Beaufort at 1330 hours.

16. At approximately 1330 hours, Plaintiff is informed and believes Edward Ray met and escorted Kalvin Hunt through the front gate of USNH and took Hunt to Managed Care Intake in said Hospital.

17. Defendant Case Pro provided personnel to staff Managed Care Intake at USNH pursuant to contracts with the Naval Medical Logistics Command and Case Pro.

18. Upon information and belief, Kalvin Hunt was interviewed by agents and/or employees of Defendant USNH and Defendant Case Pro while in the presence of Edward Ray.

19. During this interview, Kalvin Hunt was asked, in the presence of Edward Ray, if he wanted to hurt himself and others.

20. During this interview, Kalvin Hunt stated to representatives of Defendant USNH and Defendant Case Pro, in the presence of Edward Ray, that he did want to hurt himself or others.

21. As a result, personnel employed by Defendant Case Pro and personnel of the USNH were aware that Kalvin Hunt presented a serious danger of violence to others.

4

22. Beginning at approximately 1330 hours, personnel employed by Defendant Case Pro had knowledge that Kalvin Hunt posed a specific threat of harm to others.

23. Beginning at approximately 1330 hours, personnel employed by Defendant Case Pro had a special relationship with Kalvin Hunt.

24. Beginning at approximately 1330 hours, personnel employed by Defendant Case Pro had the ability to monitor, supervise, and control Kalvin Hunt's conduct.

25. Personnel employed by Defendant Case Pro undertook a duty to ensure that Kalvin Hunt was admitted to USNH and kept under close watch.

26. Personnel employed by Defendant Case Pro and the USNH undertook a duty to take Kalvin Hunt to the Emergency Room of USNH for medical treatment.

27. Personnel employed by Defendant Case Pro did not, however, notify law enforcement, the Department of Mental Health, or take any affirmative action reasonably necessary under the circumstance to ensure that Kalvin Hunt did not hurt others.

28. Similarly, Edward Ray, upon learning a second time that Kalvin Hunt intended to hurt himself or others, did not notify law enforcement, the Department of Mental Health, or take any affirmative action reasonably necessary under the circumstance to ensure that Kalvin Hunt did not hurt others.

29. Instead personnel employed by Defendant USNH, Defendant Case Pro and Edward Ray escorted Mr. Hunt to the Emergency Department of USNH.

30. Inexplicably, at this point personnel employed by Defendant USNH, Defendant Case Pro, and Edward Ray allowed Mr. Hunt to leave the facility unescorted.

31. Specifically, Kalvin Hunt asked to get a quick breath of fresh air and with the consent, acquiescence, and/or permission of personnel employed by Defendant USNH, Defendant Case Pro, as well as Edward Ray, Kalvin Hunt exited the facility.

32. After exiting the facility, Kalvin Hunt removed some or all of his clothing and left the USNH property on foot, running past the security or sentry post or guard house and its guards.

33. At about the same time, the Town of Port Royal Fire Department was responding to a non-fire emergency call at the Laurel Hill Apartment Complex located near the USNH where they had left a fire truck running and unattended.

34. A naked or partially naked Kalvin Hunt jumped into the unoccupied fire truck and drove it onto the well traveled 4 lane highway known as Ribaut Road from the apartment complex parking lot.

35. After the defendants negligently allowed Kalvin Hunt to leave the hospital, Kalvin Hunt, operating the stolen fire truck, suddenly and without warning struck Plaintiff's vehicle with the fire truck seriously injuring the Plaintiff.

36. Plaintiff suffered personal injuries and experienced pain and suffering from this impact and sought medical care and treatment for her personal injuries and all damages as set forth hereafter.

**FIRST CASE OF ACTION**
*(Negligence: Duty and Breach of Duty)*
**Rule 19, FRCP**
**As to Defendant Case Pro**

37. Plaintiff incorporates by reference all allegations contained in all the Paragraphs above, as if set forth verbatim herein.

38. Defendant Case Pro contracted with Naval Medical Logistics Command to supply various personnel and services over an extended period of time, including the date of this incident, to USNH, but said Defendant is not a federal not State agency but a necessary party pursuant to Rule 19, FRCP.

39. Defendant had a contractual duty to provide personnel at the Managed Care Intake, the Emergency Department/Room, and the Urgent Care Clinic at USNH.

40. This claim is not brought pursuant to 10 USC § 1089 and does not allege acts of medical negligence.

41. Specifically, this claim is brought for the negligent acts/omissions of this Defendant's employees/agents who:

(i) had specific knowledge that Kelvin Hunt posed a specific threat of harm to himself and others;

(ii) had a special relationship with Kalvin Hunt;

(iii) had the ability to monitor, supervise, and control Kalvin Hunt's conduct;

(iv) undertook a duty to ensure that Kalvin Hunt was delivered to the USNH Emergency Room for medical treatment and kept under close watch.

42. As such, Defendant Case Pro's duties – undertaken voluntarily and/or pursuant to contract – included, but were not limited to:

(i) Assisting with screening potential patients at Managed Care Intake check-in;

(ii) Recognizing signs that an individual may hurt themselves or others and ensuring appropriate action was taken, and promptly notifying Defendant USNH of such dangers, and seeking or giving assistance to Defendant USNH with management of Kalvin Hunt;

(iii) Screening potential patients to determine whether treatment should be provided and the nature of said treatment;

(iv) utilizing sound judgment and crisis intervention skills, including physical restraint, to prevent situations that may become harmful to the patient and others;

(v) Instituting precautionary measures to prevent injuries to patients or others due to suicide, homicide, or elopement;

(vi) Intervening as crisis counselors in situations requiring immediate psychological treatment such as substance abuse, suicide attempts, psychotic episodes, and other instances;

(vii) Ensuring that an individual in crisis is delivered to qualified medical personnel with security training and facilities when they indicate that they intend to hurt themselves or others; and

(viii) Such other and further particulars as the evidence may show.

43. Defendant Case Pro owed Plaintiff a duty to exercise reasonable care in performing its duties so as to prevent injury or death to Plaintiff or others similarly situated.

44. Defendant breached its duty and was negligent, grossly negligent, careless, reckless, willful, wanton and malicious in one or more of the following ways:

(i) Failing to adopt and implement adequate safety procedures and policies;

(ii) Failing to follow policies and procedures that were in place;

(iii) Failing to ensure employees/agents had or received adequate experience, training, and supervision;

(iv) Failing to exercise even the slightest degree of care in performing the duties owed to Plaintiff and/or those duties voluntarily undertaken;

(v) Failing to properly screen Mr. Hunt and appreciate the urgency of the situation and the danger presented by the particular circumstances given Mr. Hunt's previous statements and present statements that he wanted to hurt himself and others;

(vi) Failing to recognize the danger that Mr. Hunt posed to Plaintiff and others similarly situated if not closely supervised;

   (vii) Failing to utilize sound judgment and crisis intervention skills, including physical restraint, to prevent Mr. Hunt's escape, which proximately caused Plaintiff's injuries;

   (viii) Failing to institute precautionary measures to prevent injuries to Plaintiff and others similarly situated proximately caused by Mr. Hunt's elopement;

   (ix) Failing to exercise reasonable care and take necessary precautions in the transport/escort of Mr. Hunt to the Emergency Department at USNH;

   (x) Failing to promptly notify emergency or law enforcement authorities, military or civilian, of the elopement of Kalvin Hunt from the USNH and the dangers he posed to himself and others;

   (xi) In allowing Kalvin Hunt to leave the facility unattended; and

   (xii) Such other and further particulars as the evidence may show

45. As a direct and proximate result of the negligent, grossly negligent, willful, wanton and careless acts and/or omissions of Defendant Case Pro, as set forth above, Plaintiff suffered and will in the future suffer injuries, including excruciating pain and suffering, mental anguish, terror, knowledge of bodily injury, medical expenses, loss of income, and such other damages as the Court deems just and proper.

46. The actions and inactions of Defendant Case Pro were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to the Plaintiff.

47. More specifically, Defendant acted with a conscious and flagrant disregard for the rights and safety of Plaintiff and others, and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of the Plaintiff, by failing to anticipate the reasonable foreseeable risks that Kalvin Hunt posed to him and others similarly situated, and failing to immediately give emergency notice of his

elopement and to exercise even the slightest degree of care to prevent Mr. Hunt from eloping and injuring Plaintiff.

48.     Plaintiff suffered personal injuries and experienced pain and suffering from this impact and sought medical care and treatment for his personal injuries and all damages as set forth hereafter. Accordingly, this Defendant is liable for actual, in addition to punitive damages, to Plaintiff where provided.

**SECOND CAUSE OF ACTION**
**28 U.S.C.A. § 2671 et. Seq.**
**As to Defendant United States Naval Hospital**

49.     Plaintiff incorporates by reference all allegations contained in all the Paragraphs above, as if set forth verbatim herein.

50.     Defendant United States Naval Hospital is a medical facility supervised and staffed by civilian or service medical personnel of the United States Navy or other armed services and is located in Beaufort, South Carolina and have been providing general medical services to federal personnel and their families over an extended period of time, including February 24, 2012.

51.     Defendant USNH had a contract with Defendant Case Pro for Case Pro to provide personnel at the Managed Care Intake, the Emergency Department/Room, and the Urgent Care Clinic at USNH, and personnel of the Defendant USNH worked in conjunction and cooperation with Case Pro to provide medical services to its patients.

52.     This claim is not brought pursuant to 10 USC § 1089 and does not allege acts of medical negligence.

53.     Specifically, this claim is brought for the negligent acts/omissions of Defendant USNH's employees who:

(i)     had specific knowledge that Kalvin Hunt posed a specific threat of harm to himself and others;

(ii)    had a special relationship with Kalvin Hunt;

(iii)   had the ability to monitor, supervise, and control Kalvin Hunt's conduct;

(iv)    undertook a duty to ensure that Kalvin Hunt was delivered to the USNH Emergency Room for medical treatment and kept under close watch.

54.     As such, Defendant USNH's duties – undertaken voluntarily – included, but were not limited to:

(i)     Assisting with screening potential patients at Managed Care Intake check-in;

(ii)    Recognizing signs that an individual may hurt themselves or others and ensuring appropriate action was taken and promptly notifying Defendant Case Pro of such dangers, and assisting Defendant Case Pro with management of Kalvin Hunt;

(iii)   Screening potential patients to determine whether treatment should be provided and the nature of said treatment;

(iv)    Utilizing sound judgment and crisis intervention skills, including physical restraint, to prevent situations that may become harmful to the patient and others;

(v)     Instituting precautionary measures to prevent injuries to patients or others due to suicide, homicide, or elopement;

(vi)    Intervening as crisis counselors in situations requiring immediate psychological treatment such as substance abuse, suicide attempts, psychotic episodes, and other instances;

(vii)   Ensuring that individual in crisis are delivered to qualified medical personnel with security training and facilities when they indicate that they intend to hurt themselves or others; and

(viii)  Such other and further particulars as the evidence may show.

55. Defendant USNH owed Plaintiff a duty to exercise reasonable care in performing its duties so as to prevent injury or death to Plaintiff or others similarly situated from in-patients of the USNH from eloping and causing harm to others.

56. Defendant USNH breached its duty pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et. Seq, and was negligent, in one or more of the following ways:

（i） Failing to adopt and implement adequate safety procedures and policies;

（ii） Failing to follow policies and procedures that were in place;

（iii） Failing to ensure employees/agents had or received adequate experience, training, and supervision;

（iv） Failing to exercise even the slightest degree of care in performing the duties owed to Plaintiff and/or those duties voluntarily undertaken;

（v） Failing to properly screen Mr. Hunt and appreciate the urgency of the situation and the danger presented by the particular circumstances given Mr. Hunt's previous statements and present statements that he wanted to hurt himself and others;

（vi） Failing to recognize the danger that Mr. Hunt posed to Plaintiff and others similarly situated if not closely supervised;

（vii） Failing to utilize sound judgment and crisis intervention skills, including physical restraint, to prevent Mr. Hunt's escape, which proximately caused Plaintiff's injuries;

（viii） Failing to institute precautionary measures to prevent injuries to Plaintiff and others similarly situated proximately caused by Mr. Hunt's elopement;

（ix） Failing to exercise reasonable care and take necessary precautions in the transport/escort of Mr. Hunt to the Emergency Department at USNH;

  (x) Failing to promptly notify emergency or law enforcement authorities, military or civilian, of the elopement of Kalvin Hunt from the USNH and the dangers he posed to himself and others;

  (xi) In allowing Kalvin Hunt to leave the facility unattended; and

  (xii) Such other and further particulars as the evidence may show.

57. As a direct and proximate result of the negligent, grossly negligent, willful, wanton and careless acts and/or omissions of Defendant USNH, as set forth above, Plaintiff suffered and will in the future suffer injuries, including excruciating pain and suffering, mental anguish, terror, knowledge of bodily injury, loss of income, and such other damages as the Court deems just and proper.

58. The actions and inactions of Defendant USNH were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to the Plaintiff.

59. More specifically, personnel of Defendant USNH acted with a conscious and flagrant disregard for the rights and safety of Plaintiff and others, and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of Plaintiff by failing to anticipate the reasonable foreseeable risks that Kalvin Hunt posed to him and others similarly situated, and failing to exercise even the slightest degree of care to prevent Mr. Hunt from escaping and injuring Plaintiff.

60. Accordingly, Defendant USNH is liable for actual and other damages where provided, awardable to Plaintiff.

<b><u>THIRD CASE OF ACTION<br>28 U.S.C. A. § 2671 et. Seq.<br>(As to Defendant United States of America)</u></b>

61. Plaintiff incorporates by reference all allegations contained in all the Paragraphs above, as if set forth verbatim herein.

62. At all times relevant The Defendant United States of America was charged though its United States Department of the Navy, in cooperation with its adjoining component, the United States Marine Corps, with providing security for the Defendant USNH and its personnel and patients.

63. At all times relevant to this claim of Plaintiff, sentries and security personnel of the United States Navy or United States Marine Corps were stationed in a facility, guard house, or post at the vehicular and walking entrance to the United States Naval Hospital property for the purpose of screening people and their vehicles going into and exiting the Hospital property.  The security facility has a significant viewing area and persons and vehicles entering or leaving the Hospital property can be readily seen.

64. Between 1030 and 1600 hours on February 24, 2012 Kalvin Hunt was given the freedom to go outside at the Hospital alone and after removing all or most of his clothing he ran from the hospital property, past the security guard facility without pursuit or apprehension, without being instructed or admonished to stop, and without inquiring form the USNH authorities or any other responsible entity why a naked or partially clothed man was running from the USNH grounds.

65. Defendant United States of America, by and through its United States Navy personnel or its United States Marine Corps sentries and security personnel did not make any inquiry, or if it made any, then not promptly, to any person or agency or department or to any civilian law enforcement, why a man, Kalvin Hunt, would be running from the US Naval Hospital property.

66. Defendant United States of America, by and through its United States Navy personnel or its United States Marine Corps sentries and security personnel did not pursue Kalvin Hunt nor promptly notify any other military nor civilian authorities that a naked or partially naked man had run off the US Naval Hospital property into housing areas of the general population.

67. Defendant breached its duties of care and law enforcement and was grossly negligent, careless, reckless, willful, wanton and malicious in one or more of the following ways:

(i) Failing to follow policies and procedures that were in place for the security of the Naval Hospital and the general public;

(ii) Failing to ensure employees/agents had or received adequate experience, training, and supervision for the security of the Naval Hospital and the general public;

(iii) Failing to exercise even the slightest degree of care in performing the duties owed to Plaintiff and/or those duties voluntarily undertaken;

(iv) Failing to exercise even the slightest degree of care in escorting Kalvin Hunt to the Emergency Department at USNH when they could have learned that Mr. Hunt intended to injure himself and others;

(v) In allowing Kalvin Hunt to leave the facility; and

(vi) Such other and further particulars as the evidence may show.

68. The action and inactions of the United States Navy and United States Marines personnel representing the Defendant United States of America constituted acts and/or omissions which were independent and separate acts of negligence and is liable to damages pursuant to the Federal Torts Claims Act, 28 U.S.C.A. § 2671 et. seq., and such other damages as are allowed pursuant to Federal statute and laws.

69. As a direct and proximate result of the grossly negligent, willful, wanton and careless acts and/or omissions of Defendant, as set forth above, Plaintiff suffered injuries and in the future will suffer injuries, including excruciating pain and suffering, mental anguish, terror, knowledge of bodily injury, loss of income, and is entitled to such damages as the Court deems just and proper pursuant to the Federal

Torts Claims Act, 28 U.S.C.A. § 2671 et. seq., and such other damages as are allowed pursuant to Federal statute and laws.

### FOURTH CAUSE OF ACTION
### (Negligence: S.C. Tort Claims Act: S.C. Code Ann. § 15-78-10)
### As to Defendant STATE DIVISION OF VETERANS AFFAIRS

70. Plaintiff incorporates by reference all allegations contained in all the Paragraphs above, as if set forth verbatim herein.

71. This action is brought pursuant to the South Carolina Tort Claims Act, S.C. Code Section 15-78-10, et seq.

72. At all times relevant, the State Division of Veterans Affairs was and is a political subdivision of the State of South Carolina operated through the Governor's Office, and provides a Veterans Affairs Officer in Beaufort County at the Beaufort Division of Veterans Affairs, which is an extension of the State Division of Veterans Affairs.

73. At all times relevant, Edward Ray was and is the Beaufort County Veterans Affairs Officer and an employee of State Division of Veterans Affairs.

74. The State Division of Veterans Affairs is liable for the negligent acts and omissions of Edward Ray, who was acting within the scope of his official duty at all relevant times.

75. Defendant owed Plaintiff a duty to exercise reasonable care.

76. State Division of Veterans Affairs employee Edward Ray undertook a duty to monitor, supervise and/or control Kalvin Hunt and ensure that he obtained medical care so as to prevent Kalvin Hunt from harming himself, Plaintiff, or others similarly situated.

77. Defendant State Division of Veterans Affairs breached its duties and was negligent, careless, reckless, willful, wanton and malicious in one or more of the following ways:

(i) Failing to follow policies and procedures that were in place;

(ii)    Failing to ensure employees/agents had or received adequate experience, training, and supervision;

(iii)   Failing to exercise even the slightest degree of care in performing the duties owed to Plaintiff and/or those duties voluntarily undertaken;

(iv)    Failing to exercise even the slightest degree of care in escorting Kalvin Hunt to the Emergency Department at USNH despite knowing Mr. Hunt intended to injure himself and others; and

(v)     Such other and further particulars as the evidence may show.

(vi)    Failing to notify all parties at the USNH that Kalvin Hunt threatened to harm himself and others, and that Hunt had made previous similar threats in the past;

(vii)   In failing to object to the request of Kalvin Hunt that he be allowed to go outside the USNH alone for fresh air while he was making harmful threats;

(viii)  In allowing Kalvin Hunt to go outside the USNH alone and not escorting him outside;

(ix)    In failing to monitor Kalvin Hunt or insist that the hospital personnel monitor him while he was outside the USNH alone;

(x)     In failing to pursue Kalvin Hunt when he ran from the USNH;

(xi)    In failing to immediately notify the USNH security sentries and civilian law enforcement; or

(xii)   In failing to take any other actions to prevent or warn the neighboring areas that Kalvin Hunt had eloped and give them information that Hunt was a danger to himself and others.

78.     Defendant State Division of Veterans Affairs' acts and/or omissions are independent and separate acts of negligence including but not limited to those included in the SC Tort Claims Act, S.C. Code Ann. § 15-78-10.

79. As a direct and proximate result of the negligent, willful, wanton and careless acts and/or omissions of Defendant, as set forth above, Plaintiff suffered and will in the future suffer injuries, including excruciating pain and suffering, mental anguish, terror, knowledge of bodily injury, loss of income, and such other damages as the Court deems just and proper.

80. Plaintiff is informed and believes he is entitled to judgment against Defendant State Division of Veterans Affairs for actual damages pursuant to the SC Tort Claims Act, S.C. Code Ann. § 15-78-10, and such other damages as the laws and statutes allow as provided by law or statute.

### FIF CAUSE OF ACTION
### (Negligent Undertaking of Duty)
### As to All Defendants

81. Plaintiff incorporates by reference all allegations contained in all Paragraphs above, as if set forth verbatim herein.

82. Defendants Case Pro, United States Naval Hospital, the United State of America, through the Department of Navy and the United States Marine Corps, and the State Division of Veterans Affairs, voluntarily undertook a duty to keep Kalvin Hunt under supervision upon learning that he intended to hurt himself or others, which knowledge was available to all these Defendants.

83. This duty was undertaken for the benefit of those whom it was reasonably foreseeable that Kalvin Hunt would come into contact with and could subject to harm on February 24, 2012 including, but not limited to, Plaintiff.

84. Defendants Case Pro and State Division of Veterans Affairs failed and neglected to take actions they should have recognized as necessary for the protection of *inter alia* Plaintiff, and failed to exercise reasonable care in performing this undertaking by:

    (i) Failing to follow policies and procedures that were in place;

(ii)     Failing to ensure employees/agents had or received adequate experience, training, and supervision;

(iii)    Failing to exercise even the slightest degree of care in performing the duties owed to Plaintiff and/or those duties voluntarily undertaken;

(iv)    Failing to exercise even the slightest degree of care in escorting Kalvin Hunt to the Emergency Department at USNH despite knowing Mr. Hunt intended to injure himself and others;

(v)     Failing to notify all parties at the USNH that Kalvin Hunt threatened to harm himself and others, and that Hunt had made previous similar threats in the past;

(vi)    Failing to object to the request of Kalvin Hunt that he be allowed to go outside the USNH alone for fresh air while he was making harmful threats;

(vii)   In allowing Kalvin Hunt to go outside the USNH alone and not escorting him outside;

(viii)  In failing to monitor Kalvin Hunt or insist that the hospital personnel monitor him while he was outside the USNH alone;

(ix)    In failing to pursue Kalvin Hunt when he ran from the USNH;

(x)     In failing to immediately notify the USNH security sentries and civilian law enforcement of Hunt's elopement; or

(xi)    In failing to stop Hunt from leaving the properties of the USNH take any other actions to prevent or warn the neighboring areas that Kalvin Hunt had eloped and give them information that Hunt was a danger to himself and others; or

(xii)   Such other and further particulars as the evidence may show.

85.    The breach of this Duty by Defendants Case Pro, USNH, the United States of America, and the State Division of Veterans Affairs increased the risk of harm to Plaintiff were of duties owed to

19

Plaintiff, as an intended third party; and the harm Plaintiff suffered was proximately caused by the breach of these voluntary undertaken duties.

86. The breach of this Duty by Defendants Case Pro, United States Naval Hospital, the United States of America, through the Department of Navy and the United States Marine Corps, and the State Division of Veterans Affairs were the proximate cause of the injuries sustained by Plaintiff.

87. As a direct and proximate result of this breach of duty, Plaintiff has suffered damages, present and prospective, which are naturally the proximate consequence of the Defendants' wrongful acts, including injuries, mental shock and suffering, excruciating pain and suffering, mental anguish, terror, knowledge of bodily injury, loss of income, and such other damages as the Court deems just and proper.

88. Plaintiff is informed and believes he is entitled to a judgment against all Defendants.

THEREFORE, plaintiff prays for judgment against the defendant for actual damages, together with punitive damages in an appropriate amount, for the costs of this action, and for such other and further relief as the Court may deem just and proper.

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK

BY:   /s/ J. Paul Detrick
      J. Paul Detrick, Esquire  (ID #0508)
      R. Alexander Murdaugh, Esq. (ID #6342)
      101 Mulberry Street East
      Post Office Box 457
      Hampton,  SC  29924
      (803) 943-2111
      pdetrick@pmped.com
   ATTORNEYS FOR PLAINTIFF

December 4, 2013