**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| LATTANNISHA ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 9:13-cv-3394-DCN |
| | ) | |
| CASE PRO INCORPORATED, THE UNITED STATES OF AMERICA, and THE UNITED STATES NAVAL HOSPITAL, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | | |
| CHRISTOPHER D. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 9:13-cv-3395-DCN |
| | ) | |
| CASEPRO INCORPORATED, THE UNITED STATES OF AMERICA, and THE UNITED STATES NAVAL HOSPITAL, | ) ) ) ) | **ORDER** |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on identical motions for summary judgment filed by defendant CasePro, Inc. ("CasePro"). For the reasons set forth below, the court grants CasePro's motions for summary judgment.

**I. BACKGROUND**

On February 24, 2012, Kalvin Hunt ("Hunt"), a Marine on involuntary leave while appealing his dishonorable discharge, was accompanied to the Beaufort Naval Hospital ("the naval hospital") by Edward Ray ("Ray"), an employee of the Beaufort

1

County Office of Veteran's Affairs.[1]  When Hunt and Ray arrived at the naval hospital, Nurse Saundra Smith ("Smith") came to offer assistance and meet with Hunt.  While Smith was in the process of interviewing Hunt and scheduling an appointment for him to see a doctor the following Monday, Hunt began to rock back and forth in his chair and let out an exasperated kind of moan.  When Smith asked Hunt if he wanted to hurt himself, he said that he did.  At that time, Smith took Hunt and Ray to the emergency department.

Once in the emergency department, Hunt first saw triage nurse Janice McDonald ("Janice").  When Janice asked Hunt whether he had thoughts about hurting himself, he responded that he did, although he had no plan to hurt himself at that time.  Janice informed Hunt that he would be evaluated by a psychiatrist and, depending on her judgment, a decision would be made whether to admit him.  Janice turned Hunt over to her husband Joe McDonald ("Joe"), who is also a registered nurse in the emergency department.  Joe accompanied Hunt to be evaluated by Dr. Christian Jansen ("Dr. Jansen").  Dr. Jansen noted that Hunt had suicidal thoughts and thoughts of hurting others, but no specific plans.  At that time, Dr. Jansen called for a psychiatric technician from the naval hospital's mental health unit to evaluate Hunt.

Arthur Manning ("Manning"), a psychiatric technician, evaluated Hunt and recommended that Hunt be admitted.  The on-duty psychiatrist, Dr. Beverly Hendelman ("Dr. Hendelman"), accepted the recommendation and made the decision to hospitalize Hunt.  Dr. Hendelman then relayed her decision to Dr. Jansen.  The plan was to admit Hunt to nearby Beaufort Memorial Hospital because the naval hospital did not provide in-patient mental health treatment.

---

[1] Ray is now deceased.

About the time that Dr. Jansen was in the process of determining bed availability at Beaufort Memorial, Ray asked Joe if he and Hunt could go outside for some fresh air, and Joe said that they could. Once outside, Hunt removed some items of clothing and ran towards the front gate. Ray attempted to pursue Hunt, but was unable to catch him. At the same time, the Town of Port Royal Fire Department was responding to an emergency call at a nearby apartment complex. Hunt got into the still-running and unattended fire truck and began driving the fire truck down Ribaut Road at a high speed. Hunt collided with many cars, including one driven by plaintiff Lattannisha Roberts ("Roberts"). Hunt also struck and killed pedestrian Justin Miller, whose brother plaintiff Christopher Miller ("Miller") was nearby.

On December 4, 2013, Miller and Roberts filed the present actions, alleging causes of action against CasePro for negligence and negligent undertaking of duty. On January 6, 2015, CasePro moved for summary judgment in both cases. On May 5, 2015, CasePro filed a supplemental motion for summary judgment. Miller and Roberts each responded on May 12, 2015, and CasePro filed a reply on May 22, 2015. These motions have been fully briefed and are ripe for the court's review.

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48

(1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### III.  DISCUSSION

CasePro argues that Miller and Robert's claims against it should be dismissed because the doctrine of respondeat superior does not apply.  As an initial matter, CasePro does not dispute that it hired Dr. Jansen, Joe, and Janice to work at the naval hospital and that it paid their wages.  Def.'s Mot. 2.  Rather, CasePro argues that because the government—and not it—had the right to control them, respondeat superior liability does not apply.  Def.'s Mot. 6.

"The doctrine of respondeat superior provides that the employer, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment."  James v. Kelly Trucking Co., 661 S.E.2d 329, 330 (S.C. 2008) (citing Sams v. Arthur, 133 S.E. 205, 207–08 (S.C. 1926)).  "Such liability is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship."  Id.

An employer can only be held responsible for the actions of its employee if the relationship of master and servant, or employer and employee, existed at the time of the accident. Parker v. Williams & Madjanik, Inc., 239 S.E.2d 487, 489 (S.C. 1977). In Parker, the South Carolina Supreme Court noted that

> [w]hile it is clear that an employer may lend his employee to another so as to be relieved from liability for an injury caused by the negligence of the employee in performing work for the other . . . , it is equally true that an employer may direct his employee to go upon the premises of another and perform work there under the general supervision of the other person without severing the employment relation between the employer and the employee.

Id. The South Carolina Supreme Court has articulated that resolving that distinction depends on who controls the employee:

> The test generally used in determining whether an employee furnished by one person to another becomes the employee of the person to whom he is loaned is whether the employee passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it.

Id. (emphasis added); see also Foreman v. Atl. Land Corp., 245 S.E.2d 609, 611 (S.C. 1978) (holding that "[t]he critical issue" was "who had control of [the employee] at the time of the accident" and that the defendant would not be liable if another company controlled the employee); Allen v. Greenville Hotel Partners, Inc., No. 6:04-cv-1260, 2006 WL 1817804, at *4 (D.S.C. June 30, 2006) (citing Foreman and noting that the "key question" is which company had control over the employee); 74 Am. Jur. 2d Torts § 60 ("The law imposes vicarious liability on a party for the acts of another when circumstances show that the liable party controlled the conduct of the acting party."); 27 Am. Jur. 2d Employment Relationship § 357 ("As a general rule, the doctrine of respondeat superior applies only where the principal retains the right to control the time, manner, and method of employment of the agent. An employer is only vicariously liable

for the acts of an employee when the employee remains under the employer's direction and control.").

Here, the government clearly had the right of control with regard to both the work Dr. Jansen, Joe, and Janice had to do as well as the manner of performing it. The contract between CasePro and the government states that workers "providing services under this contract shall be rendering personal services to the Government and shall be subject to day-to-day supervision and control by Government personnel." CasePro's Mot. Ex. B at 21 (emphasis added). Similar language appears in other sections of the contract. See id. at 204 ("The Government supervisory personnel specified in the Task Order are responsible for providing day-to-day supervision and control of contract personnel. This includes provision of technical guidance, direction, and approval of tasks performed to satisfy requirements of the contract/task order."). Moreover, the contract grants the government the ability to evaluate the performance of contract workers: "The supervisor's responsibility for supervision of contractor personnel extends to the normal feedback that should be provided to any employee regarding the quality of their performance." Id. at 108. Contract workers all go through government orientation, id. at 29, and perform a range of mandated duties, id. at 40–41.

The contract indicates that it is entered into under the authority of 10 U.S.C. § 1091 and that any personal injury lawsuit filed "based on negligent or wrongful acts or omissions incident to performance within the scope of this contract" are subject to 10 U.S.C. § 1089. Id. at 21. Section 1089 provides that claims against the government under the Federal Torts Claims Act are the exclusive means of recovery for personal injury actions against healthcare workers working under a personal services contract

entered into under § 1091.  Additionally, an instruction from the Department of the Navy characterizes personal services contract as follows:

> In a PSC, an employer/employee relationship is created between the Government and the contract health care worker, and Government personnel exercise relatively continuous direct supervision and control over the contract health workers.  PSC health care workers are usually integrated into the facility, working alongside Government personnel performing the same tasks.

BUMED Instruction 4200.2D, CasePro's Reply Ex. A.

In response to this overwhelming evidence that the government exhibited nearly exclusive control over Dr. Jansen, Joe, and Janice, plaintiffs point only to a provision in Joe and Janice's offers of employment that provides that "[b]y accepting employment with CasePro, Inc. you will be subject to the Company's policies as set out in its Employee Manual and the requirements of the subject contract."  Pls.' Resp. Exs. O, P.  However, plaintiffs do not attach the handbook or indicate what any of the policies in the handbook entail.  Moreover, the employment offers specifically provide that to the extent that provisions of the employee manual conflict with CasePro's contract with the government, "the provisions of the contract will prevail."  Id.

Quite simply, there is no indication in the record that CasePro can control any aspect of Dr. Jansen, Joe, or Janice's work.  Therefore, CasePro is not liable under the doctrine of respondeat superior and the court grants its motion for summary judgment.

## IV.  CONCLUSION

Based on the foregoing, the court **GRANTS** CasePro's motions for summary judgment.

**AND IT IS SO ORDERED**.

*[signature]*

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 23, 2015**
**Charleston, South Carolina**

8